UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

THIERNO BAH, et al,

              Plaintiffs,

-   against –

SHOE MANIA, INC., et al.,

              Defendants.

-----------------------------------------------------------------x

MOHAMED SALEH, et al,

              Plaintiffs,

-   against

SHOE MANIA, INC., et al.,

              Defendants.

-----------------------------------------------------------------x

IBRAHIMA BERTHE,

              Plaintiff,

-   against -

SHOE MANIA, INC., et al.,

              Defendants.

-----------------------------------------------------------------x

BLAY BOAFUL, et al,

              Plaintiffs.

-   against –

SHOE MANIA, INC., et al.,

              Defendants.

-----------------------------------------------------------------x

08 Civ. 9380 (LTS) (AJP)

09 Civ. 4016 (LTS) (AJP)

09 Civ. 4107 (LTS) (AJP)

09 Civ. 7666 (LTS) (AJP)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2 0 JAN 2011

## PROPOSED ORDER GRANTING FINAL
## APPROVAL OF CLASS ACTION SETTLEMENT

The above-captioned matter came before the Court on Plaintiffs' Motion for Final Approval of Settlement, Attorneys' Fees and Service Payments (the "Motion for Final Approval"). (Docket No. 120).

Four lawsuits were filed by current and former employees of Shoe Mania, Inc. alleging that defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). The Lawsuits alleged that Shoe Mania failed to pay minimum wage, overtime and all commissions owed, and that defendants took illegal payroll deductions from the Plaintiffs. The lawsuits, captioned *Mohamed Saleh, et al. v. Shoe Mania , LLC .et al*, Civil Action No. 09 CV 4016, *Thierno Bah  v. Shoe Mania , Inc. et al*, Civil Action No. 08 CV 9380, *Ibrahima Berthe  v. Shoe Mania , Inc .et al*, Civil Action No. 09 CV 4107, *Blay Boaful  v. Shoe Mania , LLC. et al*, Civil Action No. 09 CV 7666  (hereinafter referred to jointly as the "Action"), have been consolidated by the Court after conditional certification under Section 216(b) of the FLSA had been granted in two of the actions.

In the nearly three years since the Complaints were initially filed, the parties engaged in extensive discovery and litigation, including exchanging thousands of documents.  The parties engaged in extensive settlement negotiations and jointly retained Carol Wittenberg of JAMS who lead two all-day mediation sessions.  The parties entered into a May 7, 2010 Settlement Agreement, Release & Waiver (the "Settlement Agreement"), attached as Exhibit A hereto, which provided a fund of $1,150,000 in order to resolve the claims in this matter.

On May 17, 2010, the Court entered an Order preliminarily approving the Settlement and authorizing dissemination of notice (the "Notice") to the Rule 23 Class.  The Notice informed Class members of their preliminary settlement amount, described the manner in which this award was computed, stated Class Counsel's intent to seek the payment of Service Payments to each of

2

the six named plaintiffs, and to seek attorneys' fees amounting to one-third of the Settlement, and informed the Class Members of their right to object to the Settlement or to opt-out of the Settlement. One Class Member exercised his right to opt-out of the Settlement, none of the Class Members objected to the Settlement and three potential Class Members contacted the Settlement Administrator and after providing information regarding their work for Shoe Mania, have been included as Class Members.

Based upon an examination of the Settlement Agreement between named plaintiffs Mohamed Saleh, Mohamed Abousamra, Samir Chenan, Thierno Bah, Ibrahima Berthe and Blay Boaful (collectively, "Plaintiffs"), on the one hand, and Shoe Mania, LLC, Shoe Mania, Inc., Shoe Mania DC Inc. Shoe Mania Holding Inc., Shoe Mania IX LLC., Shoe Mania IX Inc., Shoe Mania V LLC., Shoe Mania V Inc., Shoe Mania VII LLC., Shoe Mania VII Inc., Shoe Mania XI Inc., Shoe Mania XI, LLC, Shoe Mania Corp. (collectively, "Shoe Mania"), Mark Cohen, Isaac Cohen, Hamdi Maialden S/H/A "Sammy" (collectively, the "Individual Defendants" and collectively with Shoe Mania, the "Defendants"), on the other hand, and upon an examination of the Motion For Final Approval of the Class Action Settlement (the "Final Approval Application")(Docket No. 120), the Declaration of Class Counsel Mark Lubelsky and Brent Pelton in Support of Final Approval of the Class Action Settlement, the oral arguments presented at the December 3, 2010 fairness hearing (the "Fairness Hearing"), and the complete record in this matter, for the reasons set forth therein and stated on the record at the Fairness Hearing and for good cause shown,

## IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.      The Court hereby grants the Motion for Final Approval and finally approves the settlement as set forth in the Settlement Agreement and in this Order under Rule 23 and the

FLSA. The Settlement is fair, reasonable, adequate and not a product of collusion. *See* Fed. R. Civ.P.23(c), *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (*quoting Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)).

2.      The $1,150,000 settlement amount is substantial and includes meaningful payments and non-monetary consideration to Class Members. In reaching this conclusion, the Court is satisfied that the Settlement was fairly and honestly negotiated. It was the result of vigorous arms-length negotiations, which were undertaken in good faith by counsel with extensive experience in litigating wage and hour class actions, and serious questions of law and fact exist such that the value of the instant recovery outweighs the mere possibility of further relief after protracted and expensive litigation. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

3.      The parties' judgment that the Settlement is fair and reasonable, as well as the Class's favorable response to the Settlement, weigh in favor of final approval of the Settlement.

4.      The separate agreement reached between Defendants and the Retail, Wholesale and Department Store Union, and the union's support of the Settlement, provides additional support weighing in favor of final approval of the Settlement.

5.      Since granting preliminary approval of the Settlement on May 17, 2010, Simpluris, Inc., the Claims Administrator, has sent the Notice and Verification Forms approved by this Court to the members of the Settlement Class. Simpluris sent notice to 786 current and former Shoe Mania employees. Two hundred forty-three notice packets were returned by the post office and, after performing skip trace services, Simpluris re-mailed one hundred fifty two Notice Packets. One hundred and four Notice Packets were undeliverable. Three additional employees, Ibrahim Embaby, Krishna Hariram and Samuel Appiah Kusi, contacted Simpluris

4

stating that they believed that they should be part of the Class and, based on materials provided, these additional three individuals have been accepted as Class Members. Simpluris received one opt-out request from Freddy Banda, who is hereby excluded from the list of Class Members.

6.    Simpluris will deliver notices to the One hundred and four persons whose Notice Packets were undeliverable (hereinafter "Undeliverable Persons") for the first two payment cycles advising said persons that if they contact Simpluris they are entitled to monetary compensation as members of the Settlement Class. After two such notifications no further notice will be provided to any Undeliverable Person who has not contacted Simpluris and any funds attributable to those members of the Settlement Class that are not properly claimed will be returned to the settlement fund and distributed among the members of the Settlement Class.

7.    The Court finds that the proposed Class described above satisfied the following factors of Rule 23(a) and Rule 23(b)(3):

a.  NUMEROSITY:        The Court finds that the proposed Settlement Class is sufficiently numerous such that individual joinder of all its members is impracticable. Thus, the Rule 23(a)(1) numerosity requirement has been met.

b.  COMMONALITY/PREDOMINANCE:        The Court finds that there are many questions of law and fact common to the Settlement Class and that those questions substantially predominate over any questions that may affect individual Class members and satisfy Rules 23(a)(2) and 23(b)(3).

c.  TYPICALITY:        The Court finds that the proposed Class Representatives' claims arise from substantially the same course of conduct and share substantially the same legal theory as do the claims of the putative Class members. Furthermore, the proposed Class Representatives will advance the interests of all class members. The

5

proposed Class Representatives' claims are thus typical of the claims of the members of the Class and satisfy Rule 23(a)(3).

d.  ADEQUACY:          The Court finds that the proposed Class Representatives assert claims representative of the claims of the entire class. Even though the claims may not be identical to claims of every putative Class member, the proposed Class Representatives can adequately represent the putative Class because the Class Representative claims include virtually all of the most viable claims of the Class. The adequacy factor also considers Class Counsel. In this case, Class Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter. The adequacy requirement is, therefore, satisfied.

e.  SUPERIORITY:       A settlement class that will determine the issues common to all Class members and fix compensation for injury is superior to numerous trials that would risk disparate results for similarly situated individuals. The cost of litigation on a case-by-case basis would be extremely costly for each Plaintiff and the putative Class members, and piecemeal litigation would tax the resources of the judiciary. Accordingly, the Court finds that a class action is superior to other available methods for the fair and efficient adjudication of the present controversy.

8.     The Settlement shall be effective fifteen days after entry of this Order if no appeal is taken of this Order. If an appeal is taken in this matter, the effective date shall be fifteen days after the appeal is withdrawn or after an appellate decision affirming this final approval decisions becomes final.

6

9. Upon the effective date of the Settlement, each Class Member shall have released all claims that they may have had, except workers' compensation claims and certain retaliation claims arising out of this Action, as set forth in greater detail in the Settlement Agreement, that asserted in this lawsuit through December 3, 2010, including all claims for unpaid wages, interest, liquidated damages, and attorneys' fees and costs related to such claims.

10. The Court also approves the FLSA settlement and finds that it is a fair and reasonable resolution of a bona fide dispute reached as a result of contested litigation. See Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1353 (11th Cit. 1982).

11. The Court hereby grants Class Counsel's request for attorneys' fees in the amount of $383,333.33 or 33.3% of the $1,150,000.00 settlement fund. This amount is to be paid from the settlement fund and to be divided equally between the Pelton & Associates PC firm and the Mark L. Lubelsky And Associates firm.

    a. The Court hereby grants Samuel & Stein, counsel for Ibrahima Berthe, attorneys fees and reimbursement of expenses in the total sum of $15,000.00. Said $15,000.00 to be deducted from Class Counsel's attorneys fees.

12. The Court hereby grants Class Counsel's request for reimbursement of its expenses as follows: Mark L. Lubelsky And Associates in the amount of $3,792.62; and Pelton & Associates PC in the amount of $2,195.00 to be paid from the settlement fund.

13. The Court finds that the amount of fees requested is fair and reasonable using the "percentage of recovery" method, which is consistent with the trend in the Second Circuit. See, e.g., Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar, 06 Civ 4270, 2009 U.S. Dist. LEXIS 27899, at *16 (S.D.N.Y. Mar. 31, 2009); Hicks v. Morgan Stanley & Co., 2005 U.S.

7

Dist. LEXIS 24890, at *22 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second Circuit recently has been to use the percentage method.").

14.     Class Counsel's request for one-third of the settlement fund is also consistent with the trend in the Circuit.  Mohney, 2009 U.S. Dist. LEXIS 27899 at *16 (citations omitted).

15.     The attorneys' fees requested were entirely contingent upon success in this litigation. Class Counsel expended significant time and effort and advanced costs and expenses without any guarantee of compensation.

16.     The Court finds that an award of $15,000.00 to each of the six named plaintiffs reasonable in light of the efforts they have expended in furthering the interests of the Class. This amount is to be paid from the settlement fund.

17.     Within fifteen days of the effective date, Defendants shall forward to the Settlement Administrator an initial settlement check covering all service awards, along with payment of Settlement administration fees, mediation expenses and the initial payment of the settlement.

18.     Upon the effective date of this settlement, this action shall be dismissed with prejudice.

19.     This Court shall retain jurisdiction over this Action and, in the event that Defendant defaults in its payment obligations hereunder, Class Counsel may submit a letter explaining the default and seeking that the Court enforce the default provision contained in the Settlement Agreement.

20.     The Clerk of the Court is directed to close this case without further order of this Court fifteen days after entry of this Order.

ORDERED this ___19th___ day of ___January___, 2011.

8

The Honorable Laura Taylor Swain, U.S.D.J.

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
THIERNO BAH, et al,

                  Plaintiffs,

   -   against –                             08 Civ. 9380 (LTS) (AJP)

SHOE MANIA, INC., et al.,

                  Defendants.
----------------------------------------------------------------x
MOHAMED SALEH, et al,

                  Plaintiffs,

   -   against –                             09 Civ. 4016 (LTS) (AJP)

SHOE MANIA, INC., et al.,

                  Defendants.
----------------------------------------------------------------x
IBRAHIMA BERTHE,

                  Plaintiff,

   -   against –                             09 Civ. 4107 (LTS) (AJP)

SHOE MANIA, INC., et al..

                  Defendants.
----------------------------------------------------------------x
BLAY BOAFUL, et al.

                  Plaintiffs,

   -   against –                             09 Civ. 7666 (LTS) (AJP)
   -
SHOE MANIA, INC.. et al.,

                  Defendants.
----------------------------------------------------------------x

## SETTLEMENT AGREEMENT

# EXHIBIT "A"

## SETTLEMENT AGREEMENT, RELEASE & WAIVER

This Settlement Agreement, Release and Waiver ("Agreement") is made this 7th day of April, 2010, by and between Mohamed Saleh ("Saleh"), Mohamed Abousamra ("Abousamra") and Samir Chenan ("Chenan"), and Thierno Bah ("Bah"), Ibrahima Berthe ("Berthe") and Blay Boaful ( "Boaful" and, collectively with Saleh, Abousamra, Chenan, Bah and Berthe, the "Named Plaintiffs" or the "Class Representatives"), on behalf of themselves and the class they purport to represent, their agents, representatives, assignees, heirs, executors, beneficiaries and trustees (the "Plaintiffs"); and Shoe Mania, LLC, Shoe Mania, Inc., Shoe Mania DC Inc. Shoe Mania Holding Inc., Shoe Mania IX LLC., Shoe Mania IX Inc., Shoe Mania V LLC.,Shoe Mania V Inc., Shoe Mania VII LLC., Shoe Mania VII Inc., Shoe Mania XI Inc., Shoe Mania XI, LLC., Shoe Mania Corp., Mark Cohen, ("Retail Defendant") Isaac Cohen, Hamdi Maialden S/H/A "Sammy", ("Non Retail Defendant")(Retail Defendant and Non Retail Defendant are collectively referred to as "Defendant") (Defendant and Plaintiffs are collectively referenced herein as the "Parties").

WHEREAS, Mohamed Saleh, Mohamed Abousamra, and Samir Chenan commenced litigation in the U.S. District Court for the Southern District of New York (the "Court") captioned *Mohamed Saleh, et al. v. Shoe Mania, LLC .et al,* Civil Action No. 09-CV-4016, and WHEREAS, Thierno Bah commenced litigation in the Court captioned *Thierno Bah v. Shoe Mania, Inc. et al,* Civil Action No. 08-CV-9380, and WHEREAS, Ibrahima Berthe commenced litigation in the Court captioned *Ibrahima Berthe v. Shoe Mania, Inc .et al,* Civil Action No. 09-CV-4107, and WHEREAS, Blay Boaful commenced litigation in the Court captioned *Blay Boaful v. Shoe Mania, LLC. et al,* Civil Action No. 09 CV 7666 (hereinafter referred to jointly as the "Action"), in which the Class Representatives asserted claims under the Fair Labor Standards Act, 29 U.S.C. § 201, 206, 207, *et seq.*. ("FLSA"), and the New York Labor Law §191 *et seq* and §650 *et seq*, ("NYLL") arising out of Defendant's alleged failure to pay, *inter alia*, minimum wages, spread of hours compensation, and overtime compensation for all hours worked in excess of forty per workweek;

WHEREAS, Plaintiffs hereby agree to discontinue the Action as against Isaac Cohen and Hamdi Maialden, and Plaintiffs acknowledge that Isaac Cohen and Hamdi Maialden are not obligated to make the payments set forth herein; and

WHEREAS, the Named Plaintiffs bring the claims asserted in the Action as a collective action pursuant to 29 U.S.C. § 216(b) and as a class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and all other current and former similarly situated employees of the Defendants. Specifically excluded from any recovery under this Agreement is any Defendant and Hamdi Maialden; and

WHEREAS, Defendant denies that it has committed any wrongdoing or violated any state or federal law pertaining to payment of wages or hours of work, has vigorously disputed the claims asserted in the Action, and asserts that it has strong defenses to the claims in the Action which it believes are meritorious; and

WHEREAS, in order to avoid the expense and burden of further litigation, the Parties desire to resolve (i) any and all claims that were or could have been asserted under the FLSA and

NYLL, and the regulations pertaining thereto on behalf of Retail Sales Persons, Stock Persons, Security Guards, Cashiers, Assistant Mangers, Managers, and Office Personnel who worked for Defendant in New York during the applicable statute of limitations period and who submit written consents to join the Action prior to the Final Approval of the Settlement; and (ii) any and all claims that were or could have been asserted under New York wage and hour laws and the regulations pertaining thereto, including without limitation minimum wage claims, spread of hours claims, and overtime pay claims, on behalf of Retail Sales Persons, Stock Persons, Security Guards, Cashiers; Managers; Assistant Managers and Office Personnel who worked for Defendant in New York at any time from October 13, 2002 through the date of Preliminary Approval of the Settlement who do not opt-out of the Settlement (the "Settlement Class"); and

WHEREAS, Pelton & Associates, P.C. and Mark L. Lubelsky and Associates, represent that they have conducted a thorough investigation into the facts of the Action, which included reviewing numerous documents produced by Defendant and interviewing Defendant employees, and have diligently investigated the claims of the Settlement Class, are of the opinion and belief that the Settlement with Defendant is fair, reasonable, adequate and in the best interests of the Settlement Class in light of all known facts and circumstances, including the expense of litigation, defenses asserted by Defendant, uncertainty of the result through continued litigation, and risks of delay and an adverse judgment; and

WHEREAS, the Parties have engaged in arms-length comprehensive negotiations, which began in October, 2009 and included, without limitation, two full days of mediation and included an extensive exchange of discovery and settlement discussions by and between the parties and counsel, which led to the Parties' Agreement on the terms contained herein; and

WHEREAS, the Plaintiffs have the unfettered right to examine the Retail Defendant's financial records as part of this Agreement; and

WHEREAS, the Parties desire to resolve on the terms set forth below any and all claims except those specifically excluded herein that were asserted or could have been asserted on behalf of the Named Plaintiffs and the Settlement Class for work performed for Defendant during the applicable limitations period; and

WHEREAS, as a condition of this settlement, the Parties agree to broadening the scope of the alleged class to include all Retail Sales Persons, Stock Persons, Security Guards, Cashiers, Managers, Assistant Managers and Office Personnel who worked for Defendant in New York from October 13, 2002 through the Court's Preliminary Approval of the Settlement, while specifically excluding any Defendant in this Action and Hamdi Maialden from recovery; and

Whereas, Retail Defendant represents that Retail Defendant is engaged in the business of retail sales and has operated at a loss in excess of $1 million dollars for the calendar year 2009.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual promises hereinafter set forth, the Parties agree as follows:

CONFIDENTIAL
**SETTLEMENT AGREEMENT, RELEASE & WAVIER**

1.  **No Admission of Liability.**  Defendant expressly denies any wrongdoing or any violation of state or federal law as alleged in the Action.  Nothing contained in this Agreement shall be construed as an admission of any liability by any Party, and all Parties agree not to offer this Agreement as evidence or otherwise use it in any judicial or administrative proceeding, except that this Agreement may be introduced in any proceeding for the sole purpose of enforcing its terms.

2.  **Approval of Settlement.**

    (a)  All terms of this Agreement are contingent upon the approval of the Parties' Settlement, Plaintiffs' satisfaction, after audit, that the Retail Defendants are operating at a loss and maintain few net assets, and certification by the Court of the Settlement Class (as defined in Section 4 below) for settlement purposes only.

        (i)  For purposes of this Agreement, "Preliminary Approval" shall occur upon the issuance of a Court order conditionally certifying the Settlement Class specified in Section 4 for purposes of providing notice to the affected individuals as described in Section 10(a).

        (ii)  If the Court issues an order finally and unconditionally granting the Parties' motion for approval of their settlement, granting final certification of the Settlement Class specified in Section 4 for settlement purposes only, authorizing payments to Class Counsel, Counsel for Ibrahima Berthe and members of the Settlement Class as specified in Sections 7 and 10, and fully and finally extinguishing claims against Defendant as specified in Section 11, final approval" shall occur (A) thirty-five (35) days after the issuance of such order, if no appeal of said order is filed within that 35-day period, or (B) upon the final disposition of any appeal that has the effect of affirming the order in its entirety ("Final Approval").

        (iii)  The Parties agree to cooperate and take all steps necessary and appropriate to obtain Preliminary Approval and Final Approval of their settlement, to effectuate all aspects of this Agreement, and to dismiss the Action with prejudice.

    (b)  Retail Defendant does not waive, and instead expressly reserves, its right to challenge the propriety of collective action and/or class certification for any purpose as if this Agreement had not been entered into by the Parties in the event that the Court does not certify the Settlement Class for settlement purposes only.

    (c)  The Parties and their counsel agree that they will cooperate and execute a Joint Motion For Approval of Settlement (the "Joint Motion"), seeking Preliminary Approval of their proposed Settlement.  The Parties agree that they will file the Joint Motion with the Court expeditiously after all Parties have executed this Agreement.

CONFIDENTIAL
SETTLEMENT AGREEMENT, RELEASE & WAVIER

    (d)    .The Parties agree that if the Court does not approve any material term in the Parties' Joint Motion, or requires as a condition to granting the Joint Motion any term that effects a material change in this Agreement, then this Agreement may be voided at either Party's option. The Parties further agree that Retail Defendant being required to pay any amount greater than the amount specified in Section 5 shall be deemed a material change. The Parties further agree that any ruling that the Court may make regarding Class Counsel and Counsel for Ibrahima Berthe's motion or petition for an award of attorneys' fees and costs pursuant to Section 6 of the Agreement shall not constitute a material change in this Agreement, unless such award has the effect of increasing the total amount Defendant must pay in complete settlement of all claims addressed by this Agreement.

    (e)    .In conjunction with the filing of the Joint Motion, the Parties will jointly request that the Court hold a fairness hearing regarding the Parties' request for approval of their proposed settlement not less than one hundred (100) days after the filing of the Joint Motion. Counsel for the Parties will communicate with the Court and make any further filings necessary to secure the approval of their request.

## 3.    Appointment of Class Counsel

    (a)    Pelton & Associates, P.C. and Mark L. Lubelsky and Associates shall hereby be appointed to serve as counsel to all Class Members ("Class Counsel") and hereby agree to share equally in all attorney fees awarded by the Court, as set forth in Section 6.

## 4.    Settlement Class.

    (a)    ."Settlement Class" shall include all Retail Sales Persons; Stock Persons; Security Guards; Cashiers; Managers; Assistant Managers and Office Personnel; who worked for Defendant in New York between October 13, 2002 and [insert date of Preliminary Approval] and who have not opted-out of the Action as of the date of Final Approval, specifically excluding any named Defendant and Hamdi Maialden.

    (b)    .For settlement purposes only, the Parties stipulate to, and request that the Court certify the following classes: (a) the Named Plaintiffs and all individuals who have filed Opt-In Consent Forms with the Court (the "Opt-In Class")as an FLSA collective class; and (b) the Settlement Class, as defined in Section 4(a) above, as a FRCP Rule 23 class. Should, for whatever reason, the Settlement not become final, the Parties' stipulation as to FLSA collective class and FRCP Rule 23 class certification as part of the Settlement shall become null and void *ab initio* and shall have no bearing on, and shall not be admissible in connection with, the issue of whether or not certification would be appropriate in a non-settlement context. Defendants expressly reserve their right and declare that it intends to oppose class certification vigorously should this Settlement not become final.

5.  **Settlement Payment.**

(a)  Retail Defendant agrees to pay a total sum not to exceed One Million One Hundred and Fifty Thousand Dollars ($1,150,000.00) (the "Total Settlement Amount"), in order to fully and finally resolve the Action in its entirety, inclusive of all attorneys' fees and litigation costs; interest; liquidated, punitive and multiple damages; and Plaintiffs' premiums, if any.  State and federal payroll taxes, FICA and FUTA obligations imposed on Defendant by law as an employer as a result of payments made to members of the Settlement Class under this Agreement shall be paid from the Total Settlement Amount.  Defendant shall not be responsible for any taxes imposed by law on the members of the Settlement Class as a result of payments made to the Settlement Class from the Total Settlement Amount, or for any other sums in excess of the Total Settlement Amount.

(b)  The Net Settlement Amount shall be the Total Settlement Amount, less: (i) any attorneys' fees and litigation costs awarded to Class Counsel and Counsel for Ibrahima Berthe pursuant to Section 6(ii) of this Agreement; (ii) any Enhancement awarded to the class representative(s) Mohamed Saleh, Mohamed Abousamra, Samir Chenan, Thierno Bah, Blay Boaful and Ibrahima Berthe; and (iii) state and federal payroll taxes, FICA and FUTA obligations imposed on Defendant by law as an employer as a result of payments made to members of the Settlement Class and (iv) payments made to audit the Retail Defendant's financial position pursuant to this Agreement.

(c)  Any portion of the Net Settlement Amount that is unclaimed by members of the Settlement Class who have failed to cash their Settlement check within the time period allotted under Section 10(e)(i) of this Agreement (the unclaimed net settlement) shall not revert to Defendant. Rather, the unclaimed net settlement shall be distributed evenly among all remaining members of the Settlement Class("Eligible Class Members").

(d)  The Settlement payment for each Eligible Class Members shall be paid by checks payable from the Settlement Administrator as agent for the Settlement Class. The initial settlement payment (the "Initial Settlement Payment") shall be made within ten days of the Settlement Administrator's receipt of Defendants' third monthly installment of the Defendant Settlement Payment.   Thereafter, Settlement Payments will be made to the Eligible Class Members in a series of eight (8) distributions ("Settlement Distributions"). The eight (8) Settlement Distributions will be made in six month intervals commencing from the date of the Initial Settlement Payment.

(e)  Retail Defendant shall make forty-eight (48) equal monthly payments by check (the "Defendant Settlement Payment") of one forty eighth (1/48) of the Total Settlement Amount to the Settlement Administrator, less payments that the Retail Defendant makes directly to the Named Plaintiffs, as set forth in Paragraph 7,

CONFIDENTIAL
**SETTLEMENT AGREEMENT, RELEASE & WAVIER**

commencing within thirty (30) days of the Final Approval Date (as defined in paragraph 2.ii of this Agreement). Payment made by the Retail Defendant to the Settlement Administrator shall be inclusive of Attorneys Fees and Costs, as set forth in Paragraph 6. The Settlement Administrator shall make monthly distributions of Attorneys' Fees and Costs to Pelton & Associates PC, Mark L. Lubelsky and Associates and Samuel & Stein, in amounts approved by the court and as set forth in Paragraph 6.

6.    **Attorneys' Fees and Costs.**

(a)    .Class Counsel and Counsel for Ibrahima Berthe may petition the Court for an award of attorneys' fees and costs in conjunction with the Parties' settlement.

(b)    .Any attorneys' fees awarded in conjunction with the Parties' Settlement shall be paid from the Total Settlement Amount and shall reduce the amount of the Net Settlement Amount payable to members of the Settlement Class pursuant to Section 5(b) and Section 10 of this Agreement. Defendant will take no position on any request by Class Counsel for an award of fees and litigation costs that does not exceed thirty-three and one third percent (33 1/3%) of the Total Settlement Amount plus actual costs. Pelton & Associates and Mark L. Lubelsky and Associates shall each receive forty-eight monthly checks from the Settlement Administrator equaling 1/96 of the total attorney fees award Class Counsel, less the amount approved to be paid to Samuel & Stein, which shall not exceed $15,000.00. The awarded Attorney Fees will be paid by the Retail Defendant directly to the Settlement Administrator. Each check for attorneys fees payable to Samuel & Stein shall equal 1/48th of $15,000.00, or such lesser amount approved by the court.

(c)    Neither the Retail, Wholesale and Department Store Union, nor its counsel, shall be entitled to receive attorneys' fees, or any other payment of any nature, from the Total Settlement Amount.

(d)    The accountant retained by Class Counsel to review Retail Defendants' books and records will be paid from the Settlement Fund directly, or as a reimbursement to Class Counsel, within thirty (30) days of Final Approval of the Settlement.

7.    **Class Representative Enhancements.**

(a)    .Class Counsel and Counsel for Ibrahima Berthe may petition for an enhancement payment for the Class Representatives Mohamed Saleh, Mohamed Abousamra, Samir Chenan, Thierno Bah, Blay Boaful and Ibrahima Berthe ("Enhancement").

(b)    .Any Enhancement awarded in conjunction with the Parties' settlement shall be paid from the Total Settlement Amount and shall reduce the amount of the Net Settlement Amount payable to other members of the Settlement Class pursuant to Section 10 of this Agreement. Any Enhancement awarded shall be in addition to

payment that the Named Plaintiff shall receive as a member of the Settlement Class pursuant to Section 10 of this Agreement. Enhancements awarded by the Court shall be distributed directly by the Retail Defendant by check payable to the Class Representatives, to be received by Class Counsel (and counsel for Ibrahima Berthe with respect to an Enhancement payable to Ibrahima Berthe) within thirty (30) days of Final Approval of the Settlement. The Enhancement shall be reported to state and federal taxing authorities as non-wage income on IRS Form 1099. Defendant will not oppose any request for an Enhancement to Mohamed Saleh, Mohamed Abousamra, Samir Chenan, Thierno Bah, Blay Boaful and Ibrahima Berthe in the amount of $15,000.00 per person.

(c)    Any Court approved Enhancement award will be paid by Retail Defendant within thirty (30) calendar days of the Final Approval date (as defined in paragraph 2.ii of this agreement). This payment is made within thirty (30) days of the Final Approval date in order to compensate the Class Representatives for their substantial service to the Settlement Class and to provide renumeration for retaliation suffered as a result of this Action.

8.    **Administrator.**

(a)    The Parties shall jointly retain Simpliris, Inc. ("Simpluris" or the "Settlement Administrator") to serve as the administrator of the Settlement and perform services, including without limitation dissemination of notices to the Settlement Class, distribution of awards from the Net Settlement Amount to Eligible Class Members, employer tax payments and tax reporting related to the settlement payments, distribution of attorneys' fees and costs, and providing notices of the Parties' settlement to governmental authorities as required by law. All disputes relating to the Settlement Administrator's performance of its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Agreement, until all payments and obligations contemplated by the Agreement have been fully carried out.

(b)    Except as set forth in Section 5(c) of this Agreement, all costs of administering the Parties' Settlement, including all fees and costs paid to the Settlement Administrator, shall be paid by the Retail Defendant and shall be in addition to the Total Settlement Amount. The Parties shall request that Simpluris prepare an estimate of fees and costs for all services to be provided in conjunction with the Parties' Settlement and this Agreement (the "Administrative Costs") prior to the filing of the Joint Motion.

9.  **Notices Mandated by Statute.**

(a)   Upon the filing of the Joint Motion pursuant to Section 2(c) of this Agreement, the Parties will instruct the Settlement Administrator to mail notices of the Parties' proposed settlement to an "Appropriate Federal Official" and "Appropriate State Officials" (collectively, "Government Officials") as required by 28 U.S.C. § 1715.

(b)   Retail Defendant and/or the Settlement Adminstrator shall prepare the notices referenced in the preceding section. Such mailings shall also include information regarding the portion of the Net Settlement Amount that the Parties anticipate would be distributed to individuals living in each state upon Final Approval of the Parties' settlement.

10.  **Distribution of Net Settlement Amount.**

(a)   Mailing of Notices. Within fourteen (14) days after the Court grants Preliminary Approval of the Parties' proposed Settlement, the Parties shall instruct the Settlement Administrator to compile and mail to members of the Settlement Class packets containing a notice of the Parties' proposed Settlement,a Class Member Verification and Release and instructions as to how to opt-out and/or object to the Settlement. The Administrator shall send such packets by first class U.S. Mail to each member of the Settlement Class at such individual's last known address as provided by Defendant or Class Counsel.

(b)   Verification & Release Form. The Class Member Verification & Release (the "Verification Form") to be distributed in conjunction with the Parties' Settlement shall denote that the individual returning the form consents to participate as a member of the Settlement Class and to provide the Settlement Administrator with updated contact information while releasing claims against Defendant. All members of the Settlement Class will release claims and participate in the monetary distribution, whether or not they return a Verification Form, unless they submit a statement specifically requesting to be excluded from the Settlement within sixty (60) days of the date of the Notice.

(c)   Payments to Settlement Class. Within ten days of receipt of Retail Defendant's third monthly payment of the Net Settlement Amount, the Settlement Administrator shall mail checks drawn on that account, less applicable taxes and withholdings, to each member the Settlement Class. Distributions to Eligible Class Members shall be based on that individual's length of employment for Retail Defendants in a covered position in relation to the total period of employment of all members of the Settlement Class during the Class Period.

(i)   Any checks paid to Eligible Class Members shall remain valid and negotiable for one hundred and eighty (180) calendar days from the date of their issuance and may thereafter automatically be canceled if not

cashed by the Eligible Class Members within that time, at which time the funds represented by such check (including the federal and state income and employment tax withholdings and deductions from the Gross Fund Value and associated with such check) shall revert to the Settlement Fund and shall then be available for distribution during the next Settlement Payment. Eligible Class Members who fail to cash two (2) Settlement Payment checks in a row will thereafter be removed from the list of Eligible Class Members for future distribution. Administration of the Settlement shall be completed no later than five (5) years after the date of Final Approval. In the event that Settlement Funds remain one hundred and eighty (180) days after the last settlement distribution is made, such remaining amount shall be paid in equal shares to those Eligible Class Members that have been receiving checks pursuant to this Agreement. Alternatively, in the event that there is less than Two Thousand Dollars ($2,000.00) remaining in the Net Settlement Fund following the last Settlement Distribution,any such remaining funds may be donated to the American Red Cross charities.

(ii)    No person shall have any claim against Defendants, Defendants' Counsel, the Plaintiffs, the Settlement Class, Class Counsel, or Counsel for Ibrahima Berthe, specifically including the Settlement Administrator and the Settlement Class, based on mailings, distributions and payments made in accordance with this Stipulation. Eligible Class Members are solely responsible for providing the Settlement Administrator with updated mailing information.

(iii)   All Settlement payments to members of the Settlement Class shall be deemed to be income solely in the year in which such payments actually are received by the member of the Settlement Class. It is expressly understood and agreed that the receipt of such Settlement payments will not entitle any member of the Settlement Class to additional compensation or benefits under any company bonus, contest or other compensation or benefit plan or agreement in place during the period covered by the Settlement, nor will it entitle any member of the Settlement Class to any increased retirement, 401K benefits or matching benefits, or deferred compensation benefits. Nothing in this Agreement is intended to affect whatever rights may exist for any member of the Settlement Class at the time of this Agreement under the terms of any company bonus, contest or other compensation or benefit plan or agreement in place during the period covered by the Settlement, nor any retirement benefits, 401K benefits or matching benefits, or deferred compensation benefits to which the member of the Settlement Class would have been entitled absent this Settlement Agreement. It is the intent of this Settlement that the Settlement payments provided for in this Agreement are the sole payments to be made by Retail Defendant to the members of the Settlement Class as a result of this

litigation, and that the members of the Settlement Class are not entitled to any new or additional compensation or benefits as a result of having received the Settlement payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

(iv)   .The Settlement Administrator shall withhold from payments to participating members of the Settlement Class taxes and other sums as required by state or federal law. The Parties agree that fifty percent (50%) of the award paid to each member of the Settlement Class shall be treated as W-2 wages, and the remaining fifty percent (50%) shall be treated as interest for tax purposes for which a Form 1099 will be issued.

(v)   .The payment of any awards to members of the Settlement Class shall have no impact on their entitlement to or receipt of any benefits under any Defendant policy, practice, or welfare or benefit plan; or, as allowable by law, to their entitlement or unemployment compensation.

(d)   Declaration and Endorsement of Settlement Check. The Initial Settlement Payment and the first Settlement Distribution check shall contain the following statement: "I hereby give my consent to become a party to the action entitled *Saleh, et al. v. Shoe Mania, et al.*, 09 CV 4016, *Thierno Bah v. Shoe Mania , Inc. et al*, Civil Action No. 08 CV 9380 captioned *Ibrahima Berthe  v. Shoe Mania , Inc .et al*, Civil Action No. 09 CV 4107, *Blay Boaful v. Shoe Mania , LLC. et al*, or the surviving caption once all the actions have been consolidated, pending in the U.S. District Court for the Southern District of New York, and agree to be bound by the judgment therein." Upon return of the signed checks, the Settlement Administrator shall mail a copy of them to counsel for both Plaintiffs and Defendants.

11.   General Release and Covenant Not to Sue.

(a)   Upon Final Approval, all members of the Settlement Class who do not opt out shall be deemed to fully, forever, irrevocably and unconditionally release, remise, and discharge Defendants Shoe Mania, LLC Shoe Mania, Inc., Shoe Mania DC Inc. Shoe Mania Holding Inc., Shoe Mania IX LLC., Shoe Mania IX Inc., Shoe Mania V LLC., Shoe Mania V Inc., Shoe Mania VII LLC., Shoe Mania VII Inc., Shoe Mania XI Inc., Shoe Mania XI, LLC, Shoe Mania Corp. the parents, divisions, subsidiaries, predecessors and successors, and its and their directors, officers, members, fiduciaries, insurers, attorneys and agents (each in their individual and corporate capacities) and., Mark Cohen, Isaac Cohen, Hamdi Maialden S/H/A "Sammy" (collectively referred to as the "Released Parties"), from all claims, demands, rights, liabilities, and causes of action, including without limitation the released claims and unknown claims, whether for economic damages, noneconomic damages, punitive damages, restitution, tort, contract, penalties, injunctive or declaratory relief, attorneys fees, costs, or other monies or

remedies arising out of, relating to, or in connection with any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act, which are or could be the basis of any claim that Defendant acted in any manner that was unlawful.  This release includes all federal and state statutory claims, and federal and state common law claims (including but not limited to those for contract, tort, and equity), including, without limitation, the Fair Labor Standards Act, the New York Human Rights Law, the New York City Human Rights Law, the New York Labor Law (all as amended), and claims for additional compensation relating to stock options.  Specifically excluded from this release are all workers compensation claims and claims that Defendants retaliated against current or former employees who participated in this Action ("Retaliation Claims").  Retaliation Claims may only be maintained pursuant to the terms of the Stipulation of Settlement, attached hereto as Exhibit "A," with the Retail, Wholesale and Department Store UnionA "covenant not to sue" means that Plaintiffs and members of the Settlement Class promise not to file a lawsuit in court, or participate as a party in any administrative or other legal proceedings, in any forum.   In consideration of the promises made by Defendant in this Agreement, each Plaintiff and participating member of the Settlement Class agrees never to institute any suit, complaint, proceeding, grievance or action of any kind at law, in equity, or otherwise in any court of the United States, state or municipality, and administrative agency, or any arbitration or other legal forum, against Defendant for any claim referenced in the release above.  Each Plaintiff and participating member of the Settlement Class also agrees that he/she will not join, participate in, or consent to opt in to any action that he/she is similarly situated to any other employee with respect to any such released claims, and that each will elect to opt out of any such action against Defendant of which he or she is involuntarily made a member or participant.  If any Plaintiff or participating member of the Settlement Class is joined in any class or collective action for any released claims, he/she will receive no further compensation of any kind for such released claim.  Plaintiffs and participating members of the Settlement Class further acknowledge and agree that the covenant not to sue is an essential and material term of this Agreement and that no settlement could have been reached by the Parties without this term.  The Plaintiffs and participating members of the Settlement Class affirm that they understand and acknowledge the significance and consequence of this specific term of the Agreement.

12.   **Dismissal of Action.**  Within five (5) business days of Final Approval, Class Counsel shall file a dismissal of the Action with Defendant's written consent pursuant to Fed.R.Civ.P. 41(a)(1)(A)(ii).  The dismissal of the Action shall be with prejudice and without costs, waiving all rights of appeal, with the Court retaining jurisdiction over the case for purpose of ensuring compliance with the terms of the Parties' Settlement.

13.   **Voiding the Settlement Agreement.**

    (a)   .This Agreement is contingent upon the Court's approval of the Settlement. If the Court refuses to grant Preliminary Approval or Final Approval, this Agreement will thereby be rendered null and void, will not be admissible as evidence or otherwise and may not be used for any purpose in connection with any further litigation in this Action or any other lawsuit, claim, action, investigation or complaint, except that the non-disclosure obligations in Section 14 of this Agreement will remain in force with full effect.

    (b)   .Retail Defendant, at its sole discretion, may withdraw from and void this Agreement by providing notice to Class Counsel and to the Court within ten (10) days after the Settlement Administrator provides the Parties with a list of all Settlement Class members who have opted out of the Action under the following circumstances:

        (i)   .If two or more members of the Settlement Class seek to opt-out of the Action and be excluded from the Parties' Settlement.

    .If Retail Defendant exercises its option to void the Agreement pursuant to this section, the Agreement shall be null and void and of no effect whatsoever except that the Non-Disclosure obligation in Section 14 of this Agreement will remain in full force and effect. By signing this Agreement, each of the Plaintiffs agrees that he or she will not seek to be excluded from the Parties' settlement under any circumstances.

14.   **Non-Disclosure.**

    (a)   .Class Counsel, Plaintiffs and members of the Settlement Class agree that they will keep the negotiations and/or communication leading to this Agreement, strictly confidential and will not publicize, discuss, disclose or in any way convey any such information in any manner, whether in writing, orally or electronically (including online, web or internet postings, pages and blogs) to anyone not a participating member of the Settlement Class, unless compelled by law. Plaintiffs and Class Counsel are expressly prohibited from writing any articles about, or discussing with the media or at any public event or forum, the Action or the settlement. The Parties agree that Class Counsel may respond to any inquiry by any third party (other than the Settlement Administrator and Settlement Class members), including media inquiries, regarding the Action and settlement of the Action by replying only that "the matter has been resolved" but shall make no other comment. Not withstanding the foregoing, Plaintiffs and members of the Settlement Class may freely discuss all matters concerning this litigation with each other.

    (b)   .Nothing in this Agreement shall prevent Defendant from responding to any media inquiries or unfavorable media reports regarding Defendant, the Action and

settlement of the Action, except that Defendants shall not make any unfavorable comments regarding the Plaintiffs or their counsel.

(c)   Plaintiffs and Class Counsel will promptly notify Retail Defendant's Counsel in advance of any demand or compulsion by law to disclose the financial terms of the settlement, the terms or contents of this Agreement, or the negotiations leading thereto, and will cooperate fully with Defendant if they decide to challenge the demand or legal compulsion requiring the Plaintiffs to disclose the terms of the Agreement.

(d)   In promotional materials regarding their law firms or legal practices, Class Counsel may represent that they settled a wage and hour case for $1,150,000.00, so long as such materials do not identify any of the Parties, the Action, or provide any information that would enable a recipient of the materials to determine that the settlement involved Defendant.

(e)   No Party or counsel for a Party shall post or maintain any information regarding the settlement or this Agreement on any internet accessible medium, including without limitation any website, except as is consistent with 14(d) above. Notwithstanding this restriction, Class Counsel may post on websites maintained by their law firm a copy of the notice issued by the Settlement Administrator pursuant to Section 10(a) for a period not to exceed sixty-five (65) days after Simpluris mails such materials to members of the Settlement Class, along with contact information for the Settlement Administrator.

(f)   Notwithstanding the foregoing, nothing herein shall prevent Class Counsel from communicating with members of the Settlement Class about the Parties' Settlement or the Agreement.

15.   **Payment of Expenses**   Upon the approval of this Agreement, the Retail Defendants' shall be responsible for the payment of the services rendered by "JAMS", the mediation services utilized by the parties to resolve this matter, as well as the costs of the Settlement Administrator.

16.   **Financial Disclosure**   Retail Defendant agrees to cooperate fully with any investigation by Plaintiffs of the Finances of the Retail Defendants to allow Plaintiffs to become reasonably satisfied that the Retail Defendants' retail operation is operating at a loss and the Retail Defendants possess limited net financial resources.   The Plaintiffs may terminate this Agreement at any time within one month of receipt of appropriate financial disclosure from the Retail Defendants.  Such termination by the Plaintiffs will render this Agreement null and void and of no effect whatsoever except that the non-disclosure obligations of Section 14 of this Agreement will remain in full force and effect.  Any financial disclosure provided to the Plaintiffs shall be kept strictly confidential.

17.   **Return of Documents**. Any documents and information, including all copies, excerpts, descriptions, electronic versions and summaries thereof, produced by Defendant as part

of settlement discussions during the period from October 31, 2008 until execution of this Agreement shall be returned to Defendant's Counsel within ten (10) days of Final Approval. The Plaintiffs agree never to disclose the contents of any documents or information produced pursuant to settlement discussions.

18. **Remedies for Violations of Agreement**. Plaintiffs expressly agree that any violation by any of them of Section 14 or Section 17 will result in irreparable harm to Retail Defendant, and that money damages would not be a sufficient remedy for any such breach, thus entitling Retail Defendant to seek specific performance and immediate temporary, preliminary or permanent injunctive relief. The Parties agree to waive any requirements for the securing or posting of any bond in connection with such a remedy. In any such proceeding, Plaintiffs waive any defense that Retail Defendant has an adequate remedy at law, or that the injury suffered as a consequence of such breach is not irreparable. Retail Defendant further reserve its right to pursue any and all remedies at law and in equity, specifically including monetary damages, against any Plaintiff who violates Section 14 or Section 17.

19. **Agreement Regarding Future Employment.** Subject to the Stipulation of Settlement entered into by and between Shoe Mania and the Retail, Wholesale and Department Store Union, attached hereto as Exhibit "A" and incorporated herein by reference, each Settlement Class member who is no longer employed by Retail Defendant agrees that Releasees have no obligation to hire or rehire him/her to work at any locations owned, operated, managed, licensed or franchised under the "Shoe Mania" brand or by any of the Releasees. A decision not to rehire a Settlement Class member alone shall not be deemed retaliatory and cannot and will not be used or relied upon as the basis of a retaliation claim or as evidence of retaliation.

20. **No Retaliation**. Consistent with its legal obligations, Defendant will not retaliate against any Settlement Class member for participating in the Action and/or the settlement. Neither Party will retaliate against any Settlement Class member based on his/her decision to participate or not participate in the Action and/or the Settlement.

21. **Mutual Full Cooperation**. The Parties agree to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents as may be necessary to implement the terms of this Agreement. The Parties shall use their best efforts to effectuate this Agreement. As soon as practicable after execution of this Agreement, Class Counsel shall, with the assistance and cooperation of Defendants' Counsel, take all necessary steps to secure the Court's Final Approval of this settlement.

22. **Non-Waiver.** No delay or omission by either Party in exercising any right under this Agreement shall operate as a waiver of that or any other right. A waiver or consent given by a Party on any one occasion shall be effective only in that instance and shall not be construed as a bar or waiver of any right on any other occasion.

23.   **Complete Agreement.**   Other than as stated herein, the Parties warrant that no representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement and that they are competent to execute this Agreement and accept full responsibility therefore. This Agreement contains and constitutes the entire understanding and agreement between the Parties and supersedes all previous oral and written negotiations, agreements, commitments, and writings in connection therewith. This Agreement may not be amended or modified except by a writing signed by authorized representatives of all Parties.

24.   **Knowing and Voluntary Agreement.**   Plaintiffs, Class Counsel and Counsel for Ibrahima Berthe each agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance. Plaintiffs further affirm that they have not been coerced threatened, or intimidated into signing this Agreement; that they have been advised to consult with an attorney; and that they in fact have consulted with an attorney before signing this Agreement. Class Counsel represents that they have conducted a thorough investigation into the facts of the Action and have diligently pursued an investigation of the claims asserted on behalf of members of the Settlement Class against Defendant.

25.   **Notices.**   Any notices issued pursuant to the terms of this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows.

*For Plaintiffs and Members of the*            *For Defendants to:*
    *Settlement Class to:*

Pelton & Associates, P.C.                Neil H. Greenberg & Associates P.C.
111 Broadway, 9th Floor                  900 Merchants Concourse
New York, NY 10006                       Suite 314
                                         Westbury, NY 11590
Mark L. Lubelsky and Associates
123 W. 18th Street
New York, NY 10011

*Counsel for Ibrahima Berthe:*

Samuel & Stein
38 West 32nd St
Suite 1210
New York, NY 10001

26.   **Severability.**   If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other provisions of this Agreement, which shall be construed, reformed and enforced to effect the purposes thereof to the fullest extent permitted by law. If one or more of the

provisions contained in the Agreement shall for any reason be held to be excessively broad in scope, subject matter or otherwise, so as to be unenforceable at law, the Parties agree that such provision(s) shall be construed to be limited or reduced so as to be enforceable to the maximum extent under the applicable law.

27.   **Enforcement of Settlement Agreement and Governing Law.** This Agreement shall be governed by New York law, without regard to that state's choice of law provisions. The Parties also hereby submit to the jurisdiction of the Court for all purposes relating to the review, approval and enforcement of the terms of this Agreement.

28.   **Retail, Wholesale and Department Store Union Agreement.** The Parties hereto acknowledge that they entered into a Stipulation of Settlement with the Retail, Wholesale and Department Store Union, attached hereto as Exhibit "A" and incorporated herein by reference.   The Stipulation of Settlement provides certain rights to Shoe Mania employees, as set forth in the agreement, which provides significant non-cash benefits for the Class.  A member of the collective class who does not participate in this Settlement shall not be covered by the provisions contained in the Stipulation of Settlement.

29.   **Default.**   In the event that a Settlement Payment is received by the Settlement Administrator five or more days late, a penalty of 10% of the late payment shall be payable to the Settlement Administrator to include in future distributions to the Eligible Class Members.  In the event that any Settlement Payment is paid five or more days late, the Settlement Administrator is directed to issue a Notice of Default by certified return receipt mail to all counsel listed in Paragraph 25.  In the event that the Settlement Administrator fails to send the Notice of Default, Class Counsel may do so.  In the event all unpaid balances are not paid in full within thirty days of service of the Notice of Default, judgment may be entered against the Retail Defendant for the unpaid balance, plus 50% of the unpaid balance, plus 9% interest on any judgment amount.  In the event of such a Judgment by Default, Class Counsel's attorneys' fees, in the percentages awarded by the Court, will be commensurately increased.  Class Counsel's attorneys' fees will be paid on the same timing as payments are made to members of the Settlement Class.

**Agreement Form and Construction.**

(a)   .The Parties agree that the terms and conditions of this Agreement are the result of lengthy, carefully considered arms-length negotiations between the Parties and that this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

(b)   .This Agreement may not be changed, altered, or modified, except in writing and signed by counsel for the Parties, and approved by the Court.  This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the Parties.

(c)    This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

(d)    The Parties agree that it is impossible or impractical to have each member of the Settlement Class execute this Settlement Agreement. The Notices will advise all Settlement Class members of the binding nature of the release and such shall have the same force and effect as if each member of the class executed this Agreement.

(e)    This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding at Final Approval as to all Parties subject to the terms and conditions provided herein.

(f)    In the event of an inconsistency between the (1) Notice of Proposed Settlement and/or Verification Form; and (2) the Settlement Agreement, the Settlement Agreement shall govern.

IN WITNESS WHEREOF, the Parties and Class Counsel each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

PLAINTIFFS, on behalf of themselves and others similarly situated,

**CLASS COUNSEL:**

*Mohamed Saleh by Bent-Pelton with*

**Mohamed Saleh**   *written authorization*
Dated: _5/7/10_

_E. E. L._

**Pelton & Associates P.C.**
Dated: _5/7/10_

**CLASS COUNSEL:**

*Mohamed Abousamra by Brent Pelton*

**Mohamed Abousamra** *with written Authorization*
Dated _5/7/10_

**Mark Lubelsky & Associates**

Dated _____

**COUNSEL FOR IBRAHIMA BERTHE:**

*Samir Chenan by Brent Pelton with*

**Samir Chenan**   *written authorization*
Dated: _5/7/10_

**Samuel & Stein**

Dated _____

**Thierno Bah**
Dated: _____

CONFIDENTIAL
SETTLEMENT AGREEMENT, RELEASE & WAVIER

(c) .This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

(d) .The Parties agree that it is impossible or impractical to have each member of the Settlement Class execute this Settlement Agreement.  The Notices will advise all Settlement Class members of the binding nature of the release and such shall have the same force and effect as if each member of the class executed this Agreement.

(e) .This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding at Final Approval as to all Parties subject to the terms and conditions provided herein.

(f) .In the event of an inconsistency between the (1) Notice of Proposed Settlement and/or Verification Form; and (2) the Settlement Agreement, the Settlement Agreement shall govern.

IN WITNESS WHEREOF, the Parties and Class Counsel each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

PLAINTIFFS, on behalf of themselves and others similarly situated,

CLASS COUNSEL:

_____
**Mohamed Saleh**
Dated: _____

_____
**Pelton & Associates P.C.**
Dated: _____

CLASS COUNSEL:

_____
**Mark Lubelsky & Associates**
Dated _____

_____
**Mohamed Abousamra**
Dated _____

COUNSEL FOR IBRAHIMA BERTHE:

**Samir Chenan**
Dated: _____

_____
**Samuel & Stein**
Dated _____

_____
**Thiefno Bah**
Dated: _____

_Page 17 of 18_

**CONFIDENTIAL**
**SETTLEMENT AGREEMENT, RELEASE & WAIVER**

(d)     .The Parties agree that it is impossible or impractical to have each member of the Settlement Class execute this Settlement Agreement. The Notices will advise all Settlement Class members of the binding nature of the release and such shall have the same force and effect as if each member of the class executed this Agreement.

(e)     .This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding at Final Approval as to all Parties subject to the terms and conditions provided herein.

(f)     .In the event of an inconsistency between the (1) Notice of Proposed Settlement and/or Verification Form; and (2) the Settlement Agreement, the Settlement Agreement shall govern.

IN WITNESS WHEREOF, the Parties and Class Counsel each voluntarily and without coercion have caused this Agreement to be signed and entered under seal as of the respective dates written below as their free acts and deeds.

**PLAINTIFFS,** on behalf of themselves and others similarly situated,

**CLASS COUNSEL:**

**Mohamed Saleh**
Dated: _____

_____
**Pelton & Associates P.C.**
Dated: _____

**CLASS COUNSEL:**

**Mohamed Abousamra**
Dated _____

_____
**Mark Lubelsky & Associates**

Dated _____

**COUNSEL FOR IBRAHIMA BERTHE:**

**Samir Chenan**
Dated: _____

_____
**Samuel & Stein**

Dated _May 5, 2010_

**Thierno Bah**
Dated: _____

**DEFENDANT,** on behalf of Shoe Mania, LLC, Shoe Mania, Inc., Shoe Mania DC Inc. Shoe Mania Holding Inc., Shoe Mania IX

_____
**Ibrahima Berthe**

*Page 17 of 18*

LLC., Shoe Mania IX Inc., Shoe Mania V LLC.,Shoe Mania V Inc., Shoe Mania VII LLC., Shoe Mania VII Inc., Shoe Mania XI Inc., Shoe Mania XI, LLC, Shoe Mania Corp.,

By: ______________________

Its: ______________________

Dated: ______

Dated 5/5/10

______________________

**Blay Boaful**
Dated ________

And **DEFENDANT**, Marc Cohen, Individually

______________________
Date __________

And **DEFENDANT**, Isaac Cohen, Individually

______________________
Date __________

And **DEFENDANT**, Hamdi Maialden S/H/A "Sammy", Individually

______________________
Date __________

CONFIDENTIAL
SETTLEMENT AGREEMENT, RELEASE & WAVIER

**DEFENDANT**, on behalf of Shoe Mania,
LLC, Shoe Mania, Inc., Shoe Mania DC Inc.
Shoe Mania Holding Inc., Shoe Mania IX
LLC., Shoe Mania IX Inc., Shoe Mania V
LLC.,Shoe Mania V Inc., Shoe Mania VII
LLC., Shoe Mania VII Inc., Shoe Mania XI
Inc., Shoe Mania XI, LLC, Shoe Mania
Corp.,

**Ibrahima Berthe**
Dated _____

**Blay Boaful**
Dated _____

By: _____

Its: _____

Dated: _____

And **DEFENDANT**, Marc Cohen,
Individually

Date _____

And **DEFENDANT**, Isaac Cohen, Individually

Date _____

And **DEFENDANT**, Hamdi Maialden S/H/A "Sammy", Individually

Date _____

**CONFIDENTIAL**
**SETTLEMENT AGREEMENT, RELEASE & WAVIER**

**DEFENDANT,** on behalf of Shoe Mania,
LLC, Shoe Mania, Inc., Shoe Mania DC Inc.
Shoe Mania Holding Inc., Shoe Mania IX
LLC., Shoe Mania IX Inc., Shoe Mania V        **Ibrahima Berthe**
LLC.,Shoe Mania V Inc.,  Shoe Mania VII      Dated_____   .
LLC., Shoe Mania VII Inc., Shoe Mania XI
Inc., Shoe Mania XI, LLC,  Shoe Mania         **Blay Boaful**
Corp.,                                        Dated _____

By: _____

Its: _____

Dated: 5-6-10

And **DEFENDANT,** Mark Cohen,
Individually

Date ____5-6-10____

And **DEFENDANT,** Isaac Cohen, Individually

Date ____5-6-10____    BY HIS ATTORNEY IN FACT

And **DEFENDANT,**  Hamdi Maialden S/H/A "Sammy", Individually

Date 5-7-2010

# Exhibit "A"

## *Stipulation of Settlement*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
THIERNO BAH, et al,

               Plaintiffs,

   -  against –                           08 Civ. 9380 (LTS) (AJP)

SHOE MANIA, INC., et al.,

               Defendants.
-------------------------------------------------------------x
MOHAMED SALEH, et al,

               Plaintiffs,

   -  against –                           09 Civ. 4016 (LTS) (AJP)

SHOE MANIA, INC., et al.,

               Defendants.
-------------------------------------------------------------x
IBRAHIMA BERTHE,

               Plaintiff,

   -  against –                           09 Civ. 4107 (LTS) (AJP)

SHOE MANIA, INC., et al.,

               Defendants.
-------------------------------------------------------------x
BLAY BOAFUL, et al,

               Plaintiffs,

   -  against –                           09 Civ. 7666 (LTS) (AJP)

SHOE MANIA, INC., et al.,

               Defendants.
-------------------------------------------------------------x

## STIPULATION OF SETTLEMENT

IT IS HEREBY STIPULATED by, between and among the parties hereto to the following:

1.    The Retail, Wholesale and Department Store Union (hereby "Union"), its agents and employees, will use  best efforts to encourage the opting-in of all collective class members to the settlement of the litigation upon the terms previously agreed here to by counsel for the plaintiffs and defendants, provided it incorporates the terms provided herein, which is subsequently referred to herein as "The Neutrality and Anti-Retaliation Agreement":

2.    The terms hereof shall be incorporated into the settlement for submission to the Court for its approval.

3.    Defendants, hereby agree with the Union with respect to Defendants' businesses located in New York City at 853 Broadway, 30 East 14th Street, 331 Madison Avenue, 654 Broadway, all located in the borough of Manhattan, and 110 8th Street, located in the borough of Brooklyn, and any other location within New York City where it now does or may conduct a business for the sale of shoes during the term of this settlement agreement, (hereby "Locations") to the following procedure for the purpose of ensuring an orderly environment at the Locations, for the employees (hereafter "Employees") of Defendants to exercise their rights under section 7 of the National Labor Relations Act ("Act") and to avoid picketing and/or other economic action directed at the Defendants in the event the Union decides to conduct an organizing campaign at the location..

2

4.    The Defendants and the Union mutually recognize that the Act guarantees the Employees the right to form or select any labor organization to act as the Employees' exclusive bargaining representative for the purpose of Collective Bargaining with the Defendants, or to refrain from such activity.

5.    The Union and the defendants agree that each and their respective agents will not coerce or threaten any of the Employees in an effort to either obtain or discourage obtaining either on behalf of the Union authorization cards or a petition establishing consent to represent the Employees for purposes of Collective Bargaining.

6.    If the Union provides one (1) day written notice to the Defendants of its intent to organize full-time and part-time cashiers, sales and stock workers (collectively) referred to as (the "Bargaining Unit") at the stores operated at the Locations.  The Defendants shall allow no more than two (2) representatives of the Union access to the Locations on any day, except Friday evenings after 5 pm and Sunday from open-close, that the stores are open during the six (6) months from the date this settlement is approved and "So Ordered" by the Court for the purpose of speaking with the employees regarding representation by the Union.  Organizing activity at the Locations shall not interfere with the operations of the Defendants or the stores, or with any of the work of the Employees who may be assigned to duty at the time.  The Union representatives shall first make their presence known upon entering a Location to the Defendants' manager at the Location.

3

7.  Within one (1) day following receipt of such notice of intent to organize Employees, the Defendants will furnish the Union with a complete list of such Bargaining Unit Employees showing their job classifications and departments.

8.  The Union may request recognition as the exclusive Collective Bargaining agent for a majority of the Bargaining Unit.  The Defendants and the Union hereby agree that Mr. Roger Maher ("Arbitrator") shall conduct a review of the Bargaining Unit's Union authorization cards and/or Union petition for membership obtained by the Union in support of its claim to represent a majority of the Bargaining Unit.  If the Arbitrator certifies that a majority of the Employees in the Bargaining unit have either joined the Union or deigned the Union as their exclusive Collective Bargaining representative, the Employer will not file a petition with the National Labor Relations Board for a representation election in connection with any demands for recognition provided for in this Agreement.

9.  If the Union is certified as specified hereinabove, the Defendants and the Union will commence negotiations expeditiously, at a mutually agreeable time and place, for a Collective Bargaining Agreement covering wages, hours and other terms and conditions of employment applicable to the Bargaining Unit.

10. The Defendants and the Union agree to bargain in good faith and to execute a written copy of the collective bargaining agreement agreed to by the Union and the Defendants, subject to ratification of that agreement by a majority of the Employees in the bargaining Unit.

11. During the six months that the Defendants and the Union have agreed to neutrality herein, the Defendants agree not to disparage the Union in any way and

4

the Union and its agents agree that there will not be any strikes (whether economic, unfair labor practice, sympathy or otherwise), sit-down, stoppage of work, retarding of work, boycott, walkouts, sympathy strikes, unfair labor practice strikes, refusal to cross picket lines either at or away from the location, whether it be of a primary or secondary nature, slowdowns, picketing, hand-billings, other interruptions of work, for any reason whatsoever or any other activities which interfere, directly or indirectly, with the Employer's operations at the stores and/or the operations at any of the Locations. The term "strike" shall include a failure to report for work because of a primary or secondary picket line at the locations, whether established by this or any other labor organization.

12.    The Defendants and the Union agree that any disputes over the interpretation or application of this Neutrality and Anti-Retaliation Agreement shall be submitted to final and binding arbitration before the Arbitrator, with the Defendants and the Union equally sharing the arbitrator's fees and expenses. It is agreed that the Arbitrator shall have the power and authority to proceed with an arbitration upon no less than 48 hours notice to Union and the Defendants, that he shall be able to award reasonable attorneys fees and costs to the prevailing party to the arbitration upon a determination by him that the other party to the arbitration lacked a good faith basis for the actions or position they took or didn't take which caused the other party to demand and proceed to arbitrate the dispute, and that he shall have the authority to order prospective relief as well as all other remedies usually available in labor arbitration. While the Union and the Defendants have the right to petition a court of competent jurisdiction to confirm or vacate the arbitrator's

5

award, the remedies ordered by the arbitrator shall be implemented within 10 days of the date of the Award, failure to do so shall relieve the Union from the restrictions set forth in Paragraph 11 hereof.

13.   The Defendants and the Union agree to arbitrate the employees' contention that the Defendants retaliated against the following employees because of their participation in the instant action(s), provided the employees designate the Union in writing as their representative for such arbitration: Blay Boaful, Eric Amosto, Osman Jailoh, Aron Varman, Jamal Singh, Suruwa Jaiteh, Edgar Ngarbaroum and David Quaye-Kumah. Such arbitration shall commence and finish within two days of hearings and the arbitrator shall write a single opinion and award. Insofar as it is practical, the arbitration shall be conducted within 30 days of the settlement being approved and "so-ordered" by the Court, and the arbitrator shall issue his opinion and award within 30 days of the conclusion of the arbitration hearing. The question to be decided in such arbitration shall be limited to determining whether the employee was retaliated against because of his participation in the lawsuit and what shall be the remedy.

14.   During the term of this settlement the Defendants agree not to retaliate against any Employee because of their participation in this or these action(s) and any claim for retaliation shall be arbitrated pursuant to the terms of this Neutrality and Anti-Retaliation Agreement. In the event the Defendants lay off an employee at a Location who is the least senior employee within his classification, the Defendants will have in an arbitration conducted pursuant to this provision a rebuttable presumption that the employee was not retaliated against for

6

participating in the action(s). Upon execution of a collective bargaining agreement providing for just cause for discipline and arbitration of disputes thereunder, the arbitration provisions of this Neutrality and Anti-Retaliation Agreement shall cease to be effective provided that the Defendant's obligation to establish and maintain a preferential hiring list as set forth in the next paragraph is adopted in the collective bargaining agreement, and provided further that all arbitration awards previously issued pursuant to the terms of this Neutrality and Anti-Retaliation Agreement have been complied with by the Defendants.

15.    The Defendants agree to establish a preferential hiring list to be made up of all employees laid-off from the 34th Street store in seniority order (longest to shortest) within each classification of cashier, sales, stock and security, and in the event that a vacancy occurs in one of these classifications at a Location the Defendants shall offer employment in seniority order to such employees within that classification before hiring otherwise.  In the event that an employee offered such employment declines the offer he shall be dropped from the seniority list for subsequent hiring.  Recall rights for vacant positions shall exist for one year following the date this stipulation is approved and so-ordered by the Court.

16.    A member of the collective class described in paragraphs 13 and 15 that does not opt-in to the settlement of the instant litigation(s) shall not be covered by the provisions in those paragraphs. This Neutrality and Anti-Retaliation Agreement is intended to be enforceable by the Union and the Defendants only.

7

DEFENDANTS' Counsel

By:

NEil H. GREENBERG
Print name

RETAIL, WHOLESALE, DEPARTMENT
STORE UNION'S Counsel

By:

JosHua PARKhurst
Print name

PLAINTIFFS' Counsel

By: _____ 2/23/10

Brent E Pelton
Print name

By: _____ 2/24/10

Mark Lubelsky
Print name

By:_____

_____
Print name

RWDSU

By: _____ 2/23/10

Stuart Appelbaum
Print name

21278

8